IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEVIN JOHNSON,

                Plaintiff,                Case No. 3:04 CV 7159

   -vs-

                                                MEMORANDUM OPINIONR

GORDON LANE, Warden,,

                Defendant.

KATZ, J.

      Pending before the Court is the January 21, 2005 Report and Recommendation of the Magistrate Judge addressing Kevin Johnson's Petition under 28 U.S.C. § 2254 for Writ Of Habeas Corpus By A Person In State Custody (Doc. No. 1). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings to which the *pro se* Petitioner objects.

## PROCEDURAL POSTURE

      In January 2001, Petitioner Kevin Johnson ("Johnson") and a co-defendant, Alfred Worwell ("Worwell"), were indicted in Cuyahoga County, Ohio for: (1) one count of kidnaping in violation of O.R.C. § 2905.01 with a sexual motivation specification; and (2) one count of rape in violation of O.R.C. § 2907.02. Johnson and Worwell were tried together, and on October 4, 2001, Johnson was found guilty of rape and not guilty of kidnaping. The trial court sentenced Johnson to a prison term of six

years with post-release control, and pronounced him a habitual sex offender. (Doc. No. 13, Exs. 3 & 4).

On February 11, 2002, Johnson appealed his conviction and sentence to the Eighth District Court of Appeals. The Court of Appeals affirmed Johnson's conviction, but vacated his sentence and remanded the case for resentencing. (Doc. No. 13, Ex. 7). On July 17, 2003, the trial court sentenced Johnson to a prison term of four years, with five years of post-release control. (Doc. No. 13, Ex. 8). The parties stipulated to the classification of Johnson as a habitual sex offender. *Id*.

Before the Court of Appeals ruled on his direct appeal, Johnson filed a Petition to Vacate or Set Aside Sentence (Doc. No. 13, Ex. 9) in the trial court. The trial court denied this petition on March 3, 2003. (Doc. No. 13, Exs. 10 & 11). On March 17, 2003, Johnson, *pro se*, appealed the denial of this petition. (Soc. No. 13, Ex. 14). The Eighth District Court of Appeals affirmed the trial court's decision. (Doc. No. 13, Ex. 17).

## BACKGROUND OF RELEVANT FACTS

The trial court was presented with a note from the jury on October 3, 2001, stating that on the previous day juror Christine Walzer ("Walzer") and two other jurors saw Alfred Worwell ("Worwell"), Johnson's co-defendant, in the parking lot while walking to their vehicles, and Worwell observed Walzer as she was entering her vehicle. (Doc. No. 13, Ex. 27, pp. 417-18). This note was written after Walzer mentioned the occurrence to the entire jury because she was unsure if she should tell the court, based on the court's instruction about the prohibition of contact with a defendant. *Id.* at 426. After a brief discussion, the jury decided to bring Walzer's observation of Worwell to the attention of the judge at the first recess. *Id.* In the meantime, the jury deliberated for the morning. *Id.* At the noon recess, the

foreman wrote a note and gave it to the bailiff. *Id.* After reviewing the note with attorneys for both sides, the court decided to conduct a *voir dire* of Walzer, and one was scheduled for the morning of October 4, 2005. While the prosecution requested an immediate phone conference for the purpose of *voir dire*, the trial court refused, instead setting it at a time when the judge could be present to make observations of Walzer's demeanor. *Id.* at 420-21. The hearing was conducted in the presence of the prosecutors, counsel for both defendants, Johnson and Worwell. *Id.* at 438. During the course of the hearing, Walzer testified that she did not make eye contact with Worwell the evening before. *Id.* at 425. Further, Worwell was standing in a different row of the parking lot, and she did not exchange any words with him. *Id.* The court then questioned Walzer specifically about any impact the incident might have on her. Walzer testified it would have no impact on her deliberations, and that she could continue to be fair and impartial. *Id.* at 428-29. In response to defense counsel's requests, the trial court asked Walzer if the jury members had discussed issues of security. She responded "No, not at all. I was just concerned because I know you are not supposed to have any contact with anybody to do with the case and I didn't know if this was considered worth noting or not." *Id.* at 433-34. In response to further questioning, Walzer said she was not concerned for her personal safety, and that when she brought the incident up, other jury members did not discuss safety concerns. *Id.* at 434. Instead, their conversation centered around whether the court should be notified. *Id.*

Counsel for the defendants requested that the court voir dire all the jury members. *Id.* at 438. The court denied the request and allowed the jury to proceed with deliberations. *Id.* at 441. However, the court indicated that if the jury reached a verdict, the court would ask the jury members cautionary questions regarding contact with unauthorized persons, impartiality and fairness before the verdict was

3

announced. *Id.* at 441-42. Before the verdict was announced, the court did just that, asking the jurors if their decision was reached fairly and impartially, without bias or prejudice for or against the State or defendants. *Id.* at 443. Further, the court asked if any juror wished to change his or her mind before the verdict was read. *Id.* All jurors responded that their verdict was impartial and they did not wish to change their minds. *Id*.

## DISCUSSION

*A.    Exhaustion of State Remedies*

The Magistrate Judge found that Johnson failed to exhaust his state court remedies. Specifically, she found that Johnson did not present the substance of his habeas claim to the Supreme Court of Ohio. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839, 848 (1999) (holding that a habeas petitioner has not exhausted his claims in state court unless he has "properly presented" his claims to the state court of last resort). Johnson has not specifically objected to this finding.

Before seeking habeas corpus review, a petitioner must meet the exhaustion requirements established in 28 U.S.C. § 2254(b) by fairly presenting all his grounds to the state courts. *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003) (citing *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)); 28 U.S.C. § 2254(b). The Sixth Circuit has stated that "[t]he exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). For a claim to be exhausted, the petitioner must present his claim to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

4

Johnson did not fully present his habeas claim before the Supreme Court of Ohio. Johnson raised the issue contained in his sole ground for relief on his direct appeal before the Eighth District Court of Appeals (Doc. No. 13, Ex. 5). The Court of Appeals overruled Johnson's assignment of error (Doc. No. 13, Ex. 7), and he never sought direct review of this decision in the Supreme Court of Ohio.

Johnson did raise the claim now made in his habeas petition in his Memorandum in Support of Jurisdiction for the appeal of the denial of his App. R. 26(B) application to reopen his direct appeal. (Doc. No. 13, Ex. 23). Rule 26(B) applications, by definition, can only be based on ineffective assistance of counsel claims. See App. R. 26(B)(1). Johnson, however, raised his habeas claim as his third proposition of law. (Doc. No. 13, Ex. 23). Even if the Supreme Court chose to grant discretionary jurisdiction to Johnson's appeal, it would have been procedurally barred from considering any issue other than ineffective assistance of appellate counsel.

Accordingly, that did not constitute a fair presentation of Johnson's claim before the state court. Raising a claim only in a context in which its merits will not be considered does not constitute fair presentation. *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000); *cf. Castille v. Peoples*, 489 U.S. 346, 351 (1989) (submission of a new claim to a state's highest court in a context in which its merits will not be considered unless there are "special and important reasons" for doing so does not constitute fair presentation of the claim). The Sixth Circuit has held that it may be assumed that a state supreme court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

Johnson has not procedurally defaulted his claim because he still has an available state court remedy through which he may attempt to exhaust his claim, namely requesting leave to file a delayed

5

appeal of his direct appeal before the Supreme Court of Ohio. Ohio S. Ct. R. II § 2(A)(4). This rule states, in pertinent part:

> In a felony case, when the time has expired for filing a notice of appeal in the Supreme Court, the appellant may seek to file a delayed appeal by filing a motion for delayed appeal and a notice of appeal.***

Ohio S. Ct. R. II § 2(A)(4)(a). A delayed appeal would give the Supreme Court an opportunity to address the merits of Johnson's claim. A motion for delayed appeal, however, only addresses the reasons for delay; the merits of the petitioner's claim are reached only after the motion is granted. The Sixth Circuit Court of Appeals has held that when a petitioner fails to file a timely appeal to the Supreme Court of Ohio and his motion for a delayed appeal is subsequently denied, the petitioner has procedurally defaulted his habeas claim. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Shabazz v. Ohio*, 1998 U.S. App. LEXIS 13444 (6th Cir. 1998).

Johnson has not exhausted his state court remedies because his claim has not been properly presented to the Supreme Court of Ohio. Notwithstanding this failure, Johnson's petition will be decided on its merits pursuant to 28 U.S.C. § 2254(b)(2).

*B.    Review on the Merits*

Johnson filed his habeas petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), wherein 28 U.S.C. § 2254(d) was codified. Under this provision, the federal district court may only grant petitioner's writ of habeas corpus if the Ohio court's adjudication of the merits of a petitioner's ground for relief:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in *Williams*, "clearly established Federal law, as determined by the Supreme Court of the United States" refers to the holdings of the Supreme Court, as opposed to its dicta, as of the time for the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The United States Supreme Court, during its 2003 term, reiterated in *Lockyer* that a state court's decision is "contrary to" Supreme Court principles when the state court applies a rule that contradicts the holdings set forth in Supreme Court cases, or "'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06). Additionally, the United States Supreme Court reasserted recently that "the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 407). Further, "a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Id. (citing *Lockyer*, 538 U.S. at 76).

In a federal review of state court proceedings, the decisions made by the trial court are not disturbed unless there is a basis for "disarming such findings of the statutory presumption that they are correct[. That presumption] may be overcome only by convincing evidence." *Smith v. Phillips*, 455

7

U.S. 209, 218 (1982). Further, a state court's application of a United States Supreme Court's principle may be found "unreasonable" only if the state court's decision was "more than incorrect or erroneous;" it must have been "'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citing *Lockyer*, 538 U.S. at 75-76; *Williams*, 529 U.S. at 409).

The landmark case on jury taint is *Remmer v. United States*, 347 U.S. 227, 229-30 (1954), in which the Supreme Court affirmed that juries in criminal cases must be free of outside influences, and announced the procedure to be followed when a party alleges that a jury has been subjected to such influences. *Id.* The correct procedure is a hearing rather than an *ex parte* judicial resolution. *Id.* However, the need for a *Remmer* hearing does not arise without an "external contact or communication regarding matters pending before the jury." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997). Even if there is external contact, "not all communications with jurors warrant a hearing for a determination of potential bias." *White v. Smith*, 984 F. 2d 163, 166 (6th Cir. 1993). A hearing is required only when there are allegations of "'intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury.'" *Frost*, 125 F.3d at 377 (quoting *United States v. Rigsby*, 45 F.3d 120, 124 (6th Cir.) *cert denied*, 514 U.S. 1134 (1995)). The trial court must use "judicial discretion to determine what steps, if any, are required to make certain that a jury has not been tainted." *Rigsby*, 45 F.3d at 124.

Johnson contends that Walzer's *voir dire* testimony demonstrates a discussion of personal safety with the remaining members of the jury, and that a safety discussion might have tainted the verdict. However, the quotations Johnson chose to include were very selective and in some cases misconstrued Walzer's testimony. When the transcript is read as a whole, it is clear that the trial court acted

8

reasonably when denying defendants' request to *voir dire* the remaining jury members. Walzer testified repeatedly that she did not feel threatened and would remain fair and impartial. (Doc. No. 13, Ex. 27, pp. 428-29, 434-37, 443). Walzer did not engage in any conversation with Petitioner's co-defendant, no communication at all took place between the two, and Worwell was positioned so far from Walzer that eye contact did not occur. The trial court acted appropriately by conducting a *voir dire* of Walzer with counsel for both parties present. Walzer testified to her belief that the matter was trivial, and that she brought it to the attention of the court only to note it for the record. *Id.* at 437.

However, the court took even more precautions to ensure that the entire jury was unbiased, and every juror on the panel was asked before the verdict was read if his or her decision was reached fairly and without bias toward either side. They answered in the affirmative. *Id.* at 443. While "'[one] may not know or altogether understand the imponderables which cause one to think what he thinks, . . . surely one who is trying as an honest [person] to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.'" *Smith v. Phillips*, 455 U.S. 209, 217 n.7 (1982) (quoting *Dennis v. United States*, 339 U.S. 162, 171 (1950)).

As for Walzer's discussion of the incident with the jury, it is clear that the discussion was limited to whether the court's instruction regarding contact with a party required her to report the incident. When the court questioned her regarding the conversation with the jury, and whether issues of security were discussed, she responded "[n]o. Security as in safety for one's self? No, not at all. I was just concerned becaue I know you are not supposed to have any contact with anbody to do with the case and I didn't know if this was considered worth noting or not." (Doc. No. 13, Ex. 27, p. 433-34). It is clear that the discussion was more procedural than substantive, and did not amount to an extraneous

9

influence on the jury. Furthermore, it is clear that the trial court did not act in an objectively unreasonable manner when relying on the *voir dire* of Walzer and the pre-verdict questioning of the entire panel when deciding that the jury had rendered a fair and impartial verdict.

Plaintiff also objects to the Magistrate's use of *United States v. Walker* as a factually comparable case. In *Walker*, the habeas plaintiff's co-defendant was in an elevator with his attorney and a jury member, although no conversation took place between them. *United States v. Walker*, 160 F.3d 1078, 1081-82 (6th Cir. 1998). The Sixth Circuit found that the trial judge erred because he handled the incident *ex parte* with the co-defendant's counsel, did not inform the defendant of the incident, and did not declare whether a hearing was necessary. *Id.* at 1083. The error was harmless, however, because the incident did not create a danger of juror bias. *Id.* The Sixth Circuit found that there was no evidence of "contact" or "communication" between the juror and defendant, so the trial court would have been "well within its discretion in declining to hold a hearing even if one had been requested." *Id.* at 1083-84.

The case at hand involves a similar situation, but with even less proximity between the two individuals. Johnson's co-defendant was standing several parking places away from the juror and no conversation, or even eye contact, took place. The juror reported the incident because of the trial court's explicit instructions to report *any* contact with the defendants, and not to express concern for personal safety. (Doc. No. 13, Ex. 27, p. 437). As a result of the report, the trial court handled the incident on the record, in a hearing where the judge asked numerous questions of the juror involving the incident itself as well as her brief discussion of the incident with the other jurors. Counsel for both parties were given the opportunity to frame questions to be asked as well. Present at the hearing were counsel

10

for both co-defendants, the defendants themselves, counsel for the state, the judge and the juror. After thoroughly questioning the juror, the trial judge declared that a hearing involving all the jurors was not necessary. As an added precaution, however, the court asked the jurors before the verdict was read whether it was reached fairly and impartially, and also inquired whether any juror wished to change their mind. The response indicated that the verdict was impartial and that the jury members believed in their decision.

The material facts in *Walker* are similar enough to control in this case. There was no evidence of "contact" or "communication" between the juror and Johnson's co-defendant. In fact, "contact" would have been almost impossible, given the physical distance between Walzer and Worwell. Further, the evidence shows that the juror merely reported the incident in order to comply with the court's instructions. As a result, the trial court was justified in using its discretion to decline to hold a hearing. The Petitioner's objections to the Magistrate's Report and Recommendation are not well-taken.

## CONCLUSION

For the reasons stated above, this Court adopts the Report and Recommendation of the Magistrate Judge. Kevin Johnson's Petition Under 28 U.S.C. § 2254 for Writ Of Habeas Corpus By A Person In State Custody (Doc. No. 1) is denied.

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    SENIOR U. S. DISTRICT JUDGE